Woodmansee, J.
The petition in this ease was filed with this court on. January *252 6, 1908, -under what is known as the “Jones law,” being an act passed by the Ohio Legislature on March 22, 1906.
The petition follows the form prescribed by the statute, and describes a residence district in the city of Cincinnati, which was formerly a part of the village of Hyde Park and Mt. Lookout, in this county. Said petition bears date of January 4, 1908, and contains the names and signatures of 196 persons who represent themselves to be qualified electors in the territory described. In compliance with the law legal notice was given of the time and place of a hearing before this court upon said petition, at which the court would hear any person or persons who were electors of the district as to the question of the petitioners being qualified electors of the said district, or upon any matters which might be brought before the court for determination relating to the sufficiency of the petition.
As this is the first petition under the present law that has reached this court, it seems proper that we should at this time consider some of the provisions of the law. The first section indicates how a petition may be filed providing for the abolishment of saloons in the territory, and the second section provides for the filing of a petition which commits the district to saloon occupancy, and the rules of evidence apply alike in the hearing of both petitions; that is to say, that the qualification of signers and the number of signers required are the same on both petitions, and the procedures under both are identically the same. A decision therefore at one hearing favorable to the party presenting the petition gives temporary encouragement only to appear at a later day to give comfort to his adversary when he presents a like petition for an opposite purpose.
What is desired then is that we may have established rules of procedure applying alike to all cases. The law relating to the admission of evidence and to the burden of proof in these cases is as fixed as the law of gravitation. The proof required to sustain one petition, as stated, is in substance the same as for any other. The court room is no place for the acrobat, no place for jugglery with the. ordinary processes of the law. Rather would we wish that this court may be known as a tribunal where every litigant secures a square deal; and in a case like this, an honest *253 court, for in. its last analysis it resolves itself into a proper counting of the votes. The proceeding is in effect voting by petition rather than by ballot, differing in one respect — when a voter casts his ballot that ends the 'matter. lie can not change his vote. It is of no effect for him to say that misrepresentation had been made to him by a zealops candidate for office, or that he had been deceived by the public press, or. that he had made a mistake in placing his mark under the eagle thinking it was a rooster, or that he voted for Smith under the impression that he was voting for Brown. There is no relief for him — his vote once deposited is counted as cast. But votes cast by petition, as in the case before us, may be withdrawn after the petition is filed under certain circumstances provided for in the law as hereafter explained.
Said petition is made up of'a series of small petitions numbering from 1 to 11 inclusive, all with like'captions and a uniform description. The petitions were made out on a typewriter machine, and on eight of them in the second paragraph of the description of territory, prescinct B as designated by the letter “B” is distinct, and on numbers 1, 7 and 8 it is less distinct, showing that the letter “H” had first been struck and over it by way of correction letter “B” was placed, this change being quite distinct in No. 8, and so indistinct on 1 and 7 as to lead counsel for contestant to claim the description to be incorrect and not in duplicate. The description would be complete without the letter. A description with the letter “IT” because of the location of precinct IT would not trace a possible boundary line. No one has claimed to have been misled by the apparent discrepancy, if it does really exist. For these reasons we hold that the objections to the description are not well taken.
The questions to be determined by this court in addition to finding that the territory described is a residence district and that the petition is correct in form and substance are: First, do the names of the qualified electors of the described territory that appear on the petition equal a majority in number of the electors therein who voted at the last general election? Second, are the signers (the names of whom should remain on the petition) voters entitled to registeredt-b *254 bona fide registered male voters of the distinct, or are they male voters entitled to register having been bona fide residents of the district for four months prior to January 6, 1908, the date of the filing of the petition, and are their signatures to the petition genuine?
The evidence discloses that 338 qualified electors, residents of the territory described in the petition, voted at the last general election. Under the law the petition to be sufficient must have the names of qualified electors equal to a majority, and in the case before us requiring the signatures of 170 qualified electors, residents of the territory at the time of the signing of the petition. At the close of the.evidence offered in favor of the petition, it was disclosed that testimony had not been offered proving that nine of the signers to the petition were qualified to sign the same, and by order of the court said nine names, being Nos. 1, 7, 32, 68, 154, 174, 175, 185 and 191 were stricken therefrom, leaving 187 names upon the petition subject to further inquiry as to whether other names should be stricken from the petition.
Coming now to specific cases about the qualifications of whom a question has been raised, the court considers first the name of J. E. Maxwell, designated on the petition, as No. 76. The evidence disclosed that Mr. Maxwell is a paralytic and could not sign his name, and that he authorized his name to be signed for him in his presence. It is claimed by the contestant that because, the law stipulates that ‘ ‘ any qualified elector may authorize any person to sign the petition for him by written power of attorney,” it thereby must follow that one person can sign for another only when thus authorized. A written power of attorney could authorize the name of an elector to be signed in his absence, but if it is the rule that one person Gan sign for an elector only when thus clothed with authority, it would practically disfranchise an elector who could neither sign nor attach his mark to a power of attorney. The court without going further, expresses the opinion that an elector, thus incapacitated, could authorize another person to sign his name to a petition in his presence. It then devolved upon the proponents of the petition to prove that the name was so. signed in the presence *255 of the party, at his request, the qualification of such elector being subject to the same proof as in other cases. Measured by this rule the court finds that the name of Mr. Maxwell should not be stricken from the petition.
The law provides that no 'elector will be allowed to add his name to the petition after it is filed, or to withdraw his signature from the petition, unless he can prove that it was secured through fraud or misrepresentation. The uniform rulings of our courts throughout the state have been that the burden of proving fraud or misrepresentation is upon the signer who wishes to withdraw his name. Our courts have also uniformly held that the signer has no right to complain because the petition may not have been read to him or that he did not understand its contents. And our courts further hold that he had no right to rely upon the statement of others as to the purpose of the petition and the territory embraced, as both are fully set out therein. But in the case before us, without applying the strict rule as to what evidence is required to justify the court in striking from the petition the ñame of a signer upon his request, if it were conceded tháj; all the statements were true and undisputed that were made by the eight signers, who appeared before the court and asked to'have their names withdrawn, then no charge of fraud or misrepresentation has been made out. In addition to this the statements of fact tending to indicate either fraud or misrepresentation wfere controverted by witnesses of equal credence, and as the burden of proof is on the signer, all these applications to have signatures stricken from the petition must be denied.
The undisputed evidence in the case is, that 166 of the signers to the petition were duly registered voters and that said voters signed the petition and no question has been raised as to the signatures of any of them except that of Mr. Maxwell, which the court holds to be legal, and therefore the 166 names should be counted. Thirty of the signers to the petition did not appear to have been registered voters, but the testimony discloses that twelve of them were proved to be citizens, and that they had been residents of the state of Ohio for more than one year, and pf the territory for more than four months before the filing of *256 said petition, which fully qualifies them to be counted with the registered voters — making the number 178.
There are nine other signers to the petition as to which there is no evidence of citizenship, but the proof is that a number of them for years had been residents of Ohio, that all of them had been residents of this state for more than a year, and residents of the territory for more than four months prior to the filing of the petition. All the decisions that I have been able to find hold that such evidence makes out a prima facie case of qualification, requiring the names to be counted if their signatures are properly proved, unless the contestants offer some evidence which shows that such parties are not thus qualified. If we follow this rule the said nine names should be added to the list of qualified signatures, making a total of 187, or seventeen more than the required majority. It is not necessary to rule upon this point, for should it be held that it was necessary for the petitioners to prove citizenship of these nine persons there would still remain after striking their names from the petition 178 qualified signers. And if we should go so far as to say that the eight signers who had asked to have their names stricken from, the list should have their request granted, in violation of the terms of the statute and the laws of evidence and in the decisions of every judicial tribunal in the commonwealth, then there would still remain on the petition 170 names, which equals in number a majority of the votes cast in said residence district at the last regular municipal election.
The hearing which in itself has not appeared of great importance has, nevertheless, naturally been a matter of concern to the people of the locality where the provisions of this law are sought to be made operative. It is to be regretted that the extremists on both sides of the issue might not be restrained. Friendships of years among neighbors ought not to be broken by differences of opinions upon questions of public policy. If, on the other hand, these disputes are' brought before our judicial tribunal in a spirit of hopeless antagonism, the result, whatever it may be, tends to lessen the influence of that judiciary which is expected to sit in unbiased judgment upon the conflicting interests of our people, which to them are all important *257 and often most sacred. The confidence of the people in our judiciary, state and national, has been the bulwark of our free institutions in all the years of %ur country’s history.
Eldon R. James and G. W. Crabbe, for petition.
Jerome D. Creed, for contestant.
We have not considered at this hearing the constitutionality of the law in question, for that has been determined by the highest judicial tribunal in the state. We have not considered whether the effect of the law is good or bad. Suffice it to say that the Legislature, composed of the chosen representatives of our people, have seen fit to enact the laiv. Until it is repealed or amended by like authority, it is the established law of the commonwealth. No judge worthy of the power committed to him, whatever his opinion of the conflicting interests before him, will do other than follow the path that has been made for him by the toil, the research and the learning of those honored judges who in years gone by have explored like fields of controversy. We rely on their decisions^ and honor their judgments. May the time never come when our people, from the humblest to the most exalted, may not go before our judiciary with any other belief than that their rights will be safe-guarded, not by favor, not by prejudice, but by a conscientious endeavor on the part of the court to deal justly with all men.
The court will certify so much of the finding herein as is required by law to the clerk of the municipal corporation of the city of Cincinnati.